THE KEOKUK AND HAMILTON BRIDGE COMPANY

*v.*

THE PEOPLE *ex rel.* County Treasurer.

*Filed at Springfield March 30, 1896.*

1. TAXES—*courts cannot revise assessor's valuation of property.* In fixing the value of property for taxation the assessor acts judicially, and the courts cannot revise his assessment on the mere ground of erroneous valuation.

2. SAME—*what defenses may be shown on application for judgment.* On an application for judgment against lands for delinquent taxes, it may be shown as a defense that the tax is unauthorized by law, or is assessed upon property not subject to taxation, or that the property has been fraudulently assessed at too high a rate.

3. SAME—*that valuation is on property beyond State line may be shown.* Upon an application for judgment against a bridge company for delinquent taxes, the defense may be interposed that a portion of the bridge lying without the State was assessed.

4. SAME—*amending assessment of bridge—mistake of assessor as to location of State line.* An assessment of a portion of a bridge between two States should not be amended by inserting the number of feet actually within the taxing State, after the words "to the State line," where it appears that the valuation returned was placed upon a greater length of the bridge under a mistaken belief of the assessor as to the location of the State line.

5. SAME—*consolidated corporation taxed at its legal domicil.* All the capital stock of a corporation formed by consolidation of corporations of different States is properly taxable in one of such States, as the corporate existence springs from the legislation of the State, and is to be regarded and treated by the authorities of the State as domiciled there.

6. SAME—*when taxation of capital stock may be based on debts.* The taxation of the capital stock of a corporation is properly based upon the amount of its debts, where the capital has been wholly swallowed up by indebtedness.

7. SAME—*amendment of certificate of levy by inserting dollar-mark.* A certificate of levy for a district school tax may be amended by inserting the dollar-mark before the figures designating the amount to be levied.

8. EVIDENCE—*presumption as to portion of railroad bridge assessed—mistake of assessor.* An assessment of a bridge stated to be made to the State line will be presumed to have been made to the point believed by the assessor to be upon the State line, rather than the

actual location of such line, where the valuation, if including only the bridge to the true location of the line, would be excessive.

9. SAME—*assessor's valuation considered to identify portion of bridge assessed.* The amount of the valuation of a portion of a bridge line between two States for the purpose of assessment may be considered in identifying the portion actually assessed, although the courts will not undertake to revise and fix the value of property assessed for taxation.

10. SAME—*levy and appropriation ordinances aided by presumption.* It will be presumed that city ordinances making appropriations and levying taxes were passed in conformity to law, and that the tax was properly levied and extended.

APPEAL from the County Court of Hancock county; the Hon. WILLIAM C. NORCROSS, Judge, presiding.

G. EDMUNDS, for appellant.

WILLIAM H. HARTZELL, State's Attorney, SHARP & BERRY BROS., and FRANK HALBOWER, for appellee:

The valuation of property is a matter of opinion, and the courts will never interfere merely because the property has been assessed at a greater value than they would have fixed. *Railroad Co.* v. *Lieb*, 83 Ill. 602; *Railroad Co.* v. *People*, 119 id. 182; *English* v. *People*, 96 id. 566; *Insurance Co.* v. *Pollak*, 75 id. 292; *Railroad Co.* v. *Donohue*, 127 id. 27; *Porter* v. *Railroad Co.* 76 id. 561; *Felsenthal* v. *Johnson*, 104 id. 21; *Railroad Co.* v. *Hodgens*, 113 id. 223; *People* v. *Iron Co.* 89 id. 116; *DuPage County* v. *Jenks*, 65 id. 275; *Glass Co.* v. *McCaleb*, 81 id. 556; *Spencer* v. *People*, 68 id. 510; *Bridge Co.* v. *People*, 145 id. 597; *Thatcher* v. *People ex rel.* 79 id. 597.

No injustice was done to the bridge company by amending the certificate of levy, and it cannot complain of the amendment. Cooley on Taxation, (2d ed.) 316; *Bishop* v. *Cone*, 3 N. H. 513; *Wells* v. *Battell*, 11 Mass. 477; *Taylor* v. *Henry*, 2 Pick. 397.

The record as amended is as conclusive of the facts recited as it would have been if made correct at first. *Railroad Co.* v. *Tontz*, 29 Kan. 460; *Halleck* v. *Boylston*, 117 Mass. 469.

The records of towns may be amended to conform to the truth of the fact. *Bush* v. *Cohn*, 3 N. H. 182; *Turnpike Co.* v. *Pomfret*, 20 Ky. 590; *Chamberlin* v. *Dover*, 13 Me. 346; *Pierce* v. *Richardson*, 37 N. H. 306.

The amendment must be made by the person who was in office at the time. *Taylor* v. *Henry*, 2 Pick. 397.

The courts are powerless to revise an assessment, or change or set aside a valuation of property made by an assessor, or by the boards authorized by law to review the same, when the assessment has been honestly made upon property subject to taxation and upon the proper basis. *Spencer* v. *People*, 68 Ill. 510; *English* v. *People*, 96 id. 566; *Adsit* v. *Lieb*, 76 id. 198; *Lyle* v. *Jacques*, 101 id. 644; *Porter* v. *Railroad Co.* 76 id. 561; *Insurance Co.* v. *Pollak*, 72 id. 292; *People* v. *Iron Co.* 89 id. 116; *Felsenthal* v. *Johnson*, 104 id. 21; *Humphreys* v. *Nelson*, 115 id. 45.

Mr. JUSTICE BAKER delivered the opinion of the court :

This was an application made at the May term, 1893, of the county court of Hancock county, by the county treasurer, for judgment on the delinquent tax list for the taxes assessed for the year 1892 on the property of the Keokuk and Hamilton Bridge Company. The company appeared and filed objections to the rendition of judgment, and the cause was continued. At the following August term the court, over the objections of the company, made an order allowing a change in the description of the tangible property assessed, and a bill of exceptions was taken and the cause again continued. There was a hearing and trial upon the objections at a subsequent term of the court, and at the May term, 1894, a judgment was entered overruling the objections and ordering the sale of the east approach of the Keokuk and Hamilton bridge and 961.18 feet of the east end of the main bridge of said Keokuk and Hamilton bridge, for the entire amount of tax, both personal and real, asked by the collector in his application for judgment. The

bridge company was allowed this appeal upon giving bond in the sum of $200 and depositing with the county treasurer $5980.39, that being the amount of the taxes for which judgment was rendered.

One of the objections filed by the bridge company to the rendition of judgment was, that in the valuation and assessment of the tangible property of said company about 851 feet of the bridge of said company situated in Iowa was by the assessor valued and assessed as in Illinois, and was not subject to taxation in Illinois.

*Keokuk and Hamilton Bridge Co.* v. *People*, 145 Ill. 596, was an appeal from the judgment for the taxes of the years 1890 and 1891 assessed against the property of the appellant. It was there held that the jurisdiction of the State of Illinois extends to the thread of the Mississippi river, or middle of the channel of commerce; that an assessor in this State, in assessing for the purposes of taxation a bridge over said river, has no right to assess any part of such bridge that is located beyond the boundary line of this State, and that section 299 of the Revenue act, relating to the assessment of bridges partly in this State, requires the assessor to give in his description, among other things, the metes and bounds of the ground occupied by such bridge and the approaches thereto, from the Illinois shore to the center of the main channel of the stream, and that under this statute it is the duty of the assessor to state in his description the length of the bridge and approaches assessed by him; and we there found that the assessor had not complied with this statutory duty of stating the length of the bridge and approach by him assessed, and found, from the evidence, that the assessment there involved was based on a valuation to the draw of said bridge, and that said draw was not located in the center of the main channel of the river, but that said main channel was east of the draw from 100 to 150 yards, and that consequently the assessor assessed property which was beyond the boundary line

of this State and located in the State of Iowa, and for the error in that regard the judgment was reversed and the cause remanded.

The record herein shows that the commission appointed by the decree of the Supreme Court of the United States in the cause of *Iowa* v. *Illinois*, 147 U. S. 1, to ascertain and designate the boundary line between the State of Iowa and the State of Illinois at the nine places where bridges cross the Mississippi river between said States, has fixed the boundary line at a point 1041 feet and eight inches east of the center of the draw or pivot-span of the bridge of the Keokuk and Hamilton Bridge Company, and that this gives 961.18 feet as the portion of the main bridge or bridge proper that lies east of the boundary line and in the State of Illinois, and locates in the State of Iowa the 850.82 feet of the main bridge that lies west of said boundary line and east of the east end of the draw. Appellant contends that the 850.82 feet of the bridge that is located immediately west of the boundary line of this State and extends west from said line to the east end of the draw, was included in the part of the bridge that was assessed in this State for the taxes of the year 1892 as tangible property belonging to it.

The description of the property assessed, as made by the assessor and as shown in the application for judgment made by the collector to the county court at its May term, 1893, was identically the same, both in words and figures, as the description of the property assessed for the years 1890 and 1891, as it appears in the report of the prior case. (145 Ill. 596.) Said description stated that the property assessed extended "to the State line between the States of Illinois and Iowa," but it did not state the length of the part of the bridge that was assessed. The question is, was the *prima facie* case made by the return, that the property assessed was all within this State, overcome by the evidence found in the record?

J. H. Cole, superintendent of the bridge, testifies that he was present on the fourth Monday of June, 1892, at the time this assessment was before the board of review in the town of Montebello; that W. L. Guthrie, the assessor who made the assessment, was a member of the board and was present, and that he, Cole, insisted that the assessment should show the length of the bridge assessed, and that the assessment should be made on the same basis, as to value, as other property in the township was assessed. He says: "I finally turned to Mr. Guthrie and said: 'Mr. Guthrie, the assessment for 1892 is made on the same basis it was for 1890 and 1891?' He said: 'Yes, sir.' I said: 'It goes to the draw-span, as before, does it not?' and he said: 'Yes, sir; it does.'" Guthrie, the assessor, was also introduced as a witness by the appellant, and he was evidently an unwilling witness. In his testimony he neither admits nor denies the above conversation, and manifestly evades giving direct answers to the questions asked him. At the instance of appellee four other persons were examined as witnesses in regard to what occurred before the board of review. They corroborate Cole as to the questions asked by him, but contradict him, with more or less certainty, as to the answers Cole claims Guthrie made. They all agree, however, that Guthrie "seemed determined not to answer any questions that Cole asked him in relation to the distance he assessed."

Guthrie, the assessor, while being examined as a witness in behalf of the bridge company, in response to the question, "I ask you at what point on the bridge, at the time you made that assessment, you believed the State line to be?" answered, "I can only answer what I understood to be the State line. I understood it ran close to this end of the draw of the bridge—east end." It was Guthrie's statutory duty to assess the value of the bridge to the State line. It must be presumed that he in good faith attempted to perform that official duty, and this

he could not do without valuing the bridge as far west as to the place where he understood that line to be. At the time he made the assessment he believed the State line to be close to the east end of the draw of the bridge, and the conclusion must be, in the absence of any evidence to the contrary, that the assessment made by him was based on a valuation to, or close to, the east end of the draw of the bridge. Besides this, the evidence shows that Guthrie, for the taxes of 1892, assessed all the property in the township, other than that of appellant, at about one-third of its fair cash value, and the testimony introduced by appellant tends strongly to show that if only that part of the bridge that lies east of the State line,—*i. e.*, the east approach and the adjoining 961.18 feet of the bridge proper,—was valued, then the assessment upon the tangible property of appellant was not only such as to make it bear much more than its just proportion of taxation, but was even some $10,000 or $12,000 more than its fair cash value. No testimony was produced to contradict, change or modify this evidence. If, however, the assessor, understanding that the State line was at the east end of the draw, assessed the approach of 707.75 feet and the 1812 feet of the bridge proper that is east of the draw, then it is manifest the valuation was not in excess of the fair cash value of the property, and perhaps but slightly more than in its just proportion, when compared with the assessments upon the other property in the township.

While it is true that the courts will not undertake to revise and fix the value of property assessed for taxation by the authorities whose function it is to ascertain such value, yet the evidence referred to may properly be considered as showing a circumstance strongly tending to support the contention of appellant that the assessor, as a matter of fact, included in his assessment the whole 1812 feet of the main bridge that lies east of the draw-span. And also corroborative of the same view are these

additional facts: that the bridge was assessed to the draw for the immediately preceding years of 1891 and 1890; that the assessment for 1892, which is the assessment here involved, was made in the spring of that year, acted upon by the local board of review in June, 1892, and, upon appeal, by the county board in July, 1892, and that the decision of this court in *Keokuk and Hamilton Bridge Co.* v. *People*, 145 Ill. 596, reversing the judgment of the court below for the taxes of 1890 and 1891, and holding that the boundary line between Illinois and Iowa, where the bridge in question crosses the Mississippi river, is from 100 to 150 yards east of the draw of said bridge, was not rendered until June, 1893. The assessments of 1890 and 1891 having been made on the theory that the State line was at the east end of the draw, and the local board of review and the county board having sustained the assessments, and the county court having rendered judgment for the taxes based on such assessments, over the specific objection that the greater part of the property valued in the assessments upon which the taxes were levied was not in the State of Illinois but in the State of Iowa, and not subject to taxation in this State, it would have been strange, indeed, if the assessor, making an assessment early in 1892, and understanding, at the time he made such assessment, that the State line ran close to the east end of the draw of the bridge, had valued the bridge for taxation only to a point 850.82 feet east of what he supposed to be, and what the boards of review and the county court had acted upon as being, the west boundary line of the State. To assume such to be the case, and in the entire absence of proof to that effect, would be unreasonable and absurd.

The question presented is not one of revising the assessment made by the officer designated by law for the performance of the duty of assessing, but it is a question of the identification of the property that was assessed. We are fully satisfied, from the evidence and the record,

that although that which the assessor assumed in his description to assess for the taxes of 1892 was the east approach and "said bridge to the State line between the States of Illinois and Iowa," yet that the property that he actually intended to value, and in fact did value, was said approach and the bridge proper to the east end of the draw, and in doing so he necessarily included in the valuation made and returned by him, the value of 850.82 feet of the main bridge that is west of the boundary line of this State and located in the State of Iowa. And it goes without saying, that the value of this 850.82 feet of bridge, which includes, as we understand the evidence, two short spans of about 160 feet each and two long spans of about 260 feet each, constituted a large part of the valuation upon which the taxes levied were based.

In fixing the value of property for taxation the assessor acts judicially, and the courts have no power to revise an assessment made by him merely because of a difference of opinion as to the reasonableness of the valuation placed upon the property, but on an application for judgment against lands for delinquent taxes a defense may be made that a tax is unauthorized by law, or is assessed upon property not subject to taxation, or that the property has been fraudulently assessed at too high a rate. *Spencer & Gardner* v. *People*, 68 Ill. 510; *Chicago, Burlington and Quincy Railroad Co.* v. *Cole*, 75 id. 591; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 561; *Cook County* v. *Chicago, Burlington and Quincy Railroad Co.* 35 id. 460; *Buttenuth* v. *St. Louis Bridge Co.* 123 id. 535; *People ex rel.* v. *Lots in Ashley*, 122 id. 297; *Republic Life Ins. Co.* v. *Pollak*, 75 id. 292; *People* v. *Big Muddy Iron Co.* 89 id. 116; *Ottawa Glass Co.* v. *McCaleb*, 81 id. 556; *Keokuk and Hamilton Bridge Co.* v. *People*, *supra*.

In the case at bar, the bridge from the State line to the east end of the draw-span was not within the limits and jurisdiction of this State, and there was no power or authority to assess the same for taxation in this State.

Said property was not subject to taxation here. The effect of including its value in the valuation that was made by the assessor was to render the assessment invalid. It would work an injustice and a fraud upon the rights of appellant to sell that part of its bridge that is in this State for the purpose of paying a tax levied here upon the value of its tangible property in Iowa, while at the same time such tangible property in Iowa is liable to taxation and sale in that State.

We think it was error to overrule the objection filed by appellant to the rendition of judgment, that in the valuation and assessment of its tangible property about 851 feet of its bridge situated in Iowa was by the assessor valued and assessed as in Illinois and was not subject to taxation in Illinois.

It necessarily follows from what we have said, that the assignment of error that the court erred in allowing the amendment of the description of the property assessed, is well assigned. The application for judgment was made at the May term, 1893, of the county court, and the proceeding was continued until the next term. At the August term, 1893, the court allowed the description of the property in the assessment to be amended by inserting after the words "along the center line of said bridge" and before the words "to the State line," the word and figures "961.18 feet." The authority of the court to permit amendments in tax proceedings, in furtherance of justice and in order to make the record correspond to the facts, is probably not different from what it is to permit amendments in the exercise of its ordinary jurisdiction. (Statute of Amendments and Jeofails, sec. 9; Cooley on Taxation,—1st ed.—p. 234; 2d ed. p. 314.) But in matters so important to the State and to property owners, amendments should be allowed only upon clear proof of the truth of all the facts that are necessary to authorize the amendment. Here the defect in the description was, that it did not give the "metes and bounds" by stating the

length of the bridge assessed, as required by the statute to be done. As we have already seen, the evidence shows that the valuation returned by the assessor was placed on 1812 feet of the bridge and not on 961.18 feet of said bridge. In order, therefore, to supply, by amendment, the statement that was omitted from the description, and have such amendment state the truth and the fact, the word and figures "1812 feet" should have been inserted in the description instead of the word and figures that were placed therein, and the words immediately following, "to the State line," etc., should have been stricken out of the description.

One of the objections made by appellant to the rendition of judgment was, that the capital stock assessments for 1891 and 1892 were by the State Board of Equalization based upon the theory that the entire capital stock of the company was owned and subject to taxation in Illinois, when only one-half thereof was subject to taxation in this State and the other half in Iowa. It seems that appellant is a consolidated corporation, formed by the consolidation of a corporation in Illinois with one in Iowa, both formed for the construction of a bridge across the Mississippi river, the boundary between said States. Assuming the correctness of the claims made by appellant as to what was the theory upon which the board of equalization acted in this regard, it seems to be in conformity with the ruling and decision of this court in *Quincy Bridge Co.* v. *Adams County,* 88 Ill. 615. According to the doctrine of that case, the corporate existence of appellant, considered as a corporation of this State, springs from the legislation of this State, and it is to be regarded and treated by the authorities of this State as domiciled here, and liable to taxation upon all its property which is of such a nature as to be taxable at the residence of the owner; and the kind of property denominated as "capital stock" does not mean shares of stock, either separately or in the aggregate, but designates the

property of the corporation subject to taxation as an homogeneous unit, partaking of the nature of personalty, and subject to the burdens imposed upon it at the domicil of the owner.   The said *Quincy Bridge Co. case* is cited and approved in the subsequent case of *Ohio and Mississippi Railroad Co.* v. *Weber*, 96 Ill. 443.

A further objection was made that the capital stock assessment of 1891 was by the State Board of Equalization based on a capital stock of $1,100,000, when, in fact, the whole capital stock of the bridge company was only $1,000,000.   Although the evidence shows that the amount of paid-up capital stock was $1,000,000, yet it also shows that the total amount of the indebtedness of the company, excluding indebtedness for current expenses, was $1,693,333.33, and that the shares of stock had neither any market value nor any actual value, and appellant admitted such to be the case, and introduced in evidence the sworn statements of its own officers and agents to the effect above stated.   This being so, it was wholly immaterial, so far as the assessment for taxation of the capital stock of the corporation was concerned, whether the paid up capital stock of appellant was $1,000,000 or $1,100,000, since, under the showing made, the value of all the property and rights of the corporation, of every kind and nature and wherever located, was absorbed and swallowed up in the value of the debt other than the debt for current expenses, and the value of the property designated by the statute as "capital stock" consisted solely of the value of such debt.   If shares of stock in a corporation are worthless because of its debts, the creditors take the place of the stockholders, and if these debts have value, it is presumptively because there is an equal amount in value of corporate property from which payment can be made.   *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602.

One of the objections filed by appellant in the county court was, that the district school tax was not properly

levied.   The certificate of levy upon which said tax was
extended was as follows:

"We hereby certify that we require the amount of 3500 to
be levied as a special tax for school purposes on the taxable
property of our district for the year 1892.

GEORGE D. GATES,
MARK BLACKMORE,
J. M. ELDER,

Directors of District 3, Township 5, Range 8, County of Han-
cock, State of Illinois."

The contention is that this certificate afforded no au-
thority for extending the tax, and that the court had no
power to authorize the directors of the district to amend
the certificate. The amendment that was made consisted
in placing the dollar-mark in front of the figures "3500."
This was allowed after all three of the directors had
testified that there was a clerical error in the certificate,
in that the dollar-mark was omitted, and that it was the
intention of the board at the time to levy $3500 for
the school purposes of the district. · The defect in the
certificate was obviously clerical, and we are inclined to
think that the certificate, on its face, especially when
read in the light of the fact that the county clerk, on
the strength of it, had extended $3500 of school tax,
sufficiently showed that dollars were intended, and that
the court might properly have overlooked·the mistake
and have supplied, by intendment, the dollar-mark that
was omitted. (Cooley on Taxation,—1st ed.—p. 234;
*Atkins* v. *Hinman*, 2 Gilm. 437; Revenue act, sec. 191.) But
be this as it may, there was no error in permitting the
amendment.   On application for judgment against lands
for taxes all such amendments as could be made in per-
sonal actions are allowable, and any omission or defect-
ive act of any officer connected with the assessment or
levying of the tax, in the discretion of the court, may be
corrected, supplied and made to conform to law, either
by the court or by the person or persons, in the presence
of the court, by whose neglect or default the same was

occasioned.   Revenue act, sec. 191; *Walsh* v. *People ex rel.* 79 Ill. 521; *Law* v. *People ex rel.* 87 id. 385.

It was also objected to the rendition of judgment that the city tax of the city of Hamilton was not properly and legally levied, there being no proper and sufficient appropriation ordinance and no proper ordinance levying a tax as required by law, and that therefore the whole of said city tax is void.   The rule is, that the collector's return of the delinquent list, and the filing of the same, with the statutory notice and proof of publication, *prima facie* entitle the collector to judgment for the taxes, and the burden of proof is then cast on the objector to show that the irregularity complained of exists, and to show sufficient grounds to defeat the application for judgment. *Moore* v. *People,* 123 Ill. 645, and authorities there cited.

At the hearing of the objections appellant offered in evidence the annual appropriation ordinance and the annual tax levy ordinance of the city, and proof of the dates on which they were respectively filed with the county clerk, but offered no evidence to show the dates at which said ordinances were passed by the city.   The times at which the several ordinances were filed with the county clerk do not fix the dates of their passage, or even tend to prove such dates.   The presumption is that the ordinances were both passed in conformity to law, and that the city tax was properly levied and extended.

For the error in allowing the change that was made in the description of the tangible property of appellant assessed by the assessor, and for the error in rendering judgment for the sale of that part of the bridge of appellant that is in Illinois for the purpose of paying taxes illegally assessed upon the value of 850.82 feet of its bridge that is located in the State of Iowa, the judgment is reversed and the cause remanded.

*Reversed and remanded.*