George J. Moniot, Exr. of the Last Will and Testament of George A. Moniot, Deceased, Plaintiff-Appellee, *v*. The Property Tax Appeal Board *et al.*, Defendants-Appellants.

(No. 72-244; ▮▮▮▮▮▮▮▮

Third District—May 14, 1973.

ALLOY, P. J., dissenting.

William J. Scott, Attorney General, of Chicago, (Bonny Barezky, Assistant Attorney General, of counsel,) for appellants.

John Berry, of Streator, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, George J. Moniot, Administrator of the estate of George A. Moniot, brought this action in the Circuit Court of La Salle County seeking to vacate a personal property tax assessment of the Board of Review of La Salle County as affirmed by the Property Tax Appeal Board. The trial court decided the issues in favor of the plaintiff in a proceeding brought by the plaintiff under the Administrative Review Act (Ill. Rev. Stat., ch. 110, sec. 264 *et seq.*).

On August 4, 1969, the Board of Review of La Salle County, Illinois sent a notice to George J. Moniot, Executor of the Estate of George A. Moniot, deceased, that the Board of Review had under consideration, of its own motion, the matter of revising the personal property tax assessment for the year 1969 which held that the estimated Federal Estate Tax shown as a deduction in computing the net credits should not be allowed. No issue relating to this part of the decision of the Board of Review is presented on this appeal because the decision of the trial court made consideration of the propriety of such decision unnecessary.

The Board of Review also assessed a personal property tax with respect to the intangible personal property of the Moniot estate. Subsequently Moniot sought review of the Board of Review's decision by the State of Illinois Property Tax Appeal Board pursuant to Ill. Rev. Stat. 1969, ch. 120, par. 592.1. A hearing was held by the Property Tax Appeal Board at which evidence was presented in support of and in opposition to the decision of the Board of Review. The Property Tax Appeal Board affirmed the personal property tax assessment and review of the order was sought in the Circuit Court of La Salle County.

Before the La Salle County Board of Review, before the Property Tax Appeal Board and before the Circuit Court of La Salle County, the plaintiff argued that the personal property tax assessment on intangible personal property was a violation of article 9, section 1 of the Illinois Constitution of 1870 and of the 14th Amendment to the Federal Constitution. The order of the circuit court invalidated the assessment of the personal property tax on the intangible personal property of the estate on the grounds that the assessment was unconstitutional and void as discriminatory. Specifically the court held the assessment was in violation of article 9, section 1 of the Constitution of the State of Illinois of 1870 and Amendment 14 of the Constitution of the United States.

Plaintiff based his constitutional objection to the personal property tax assessment on intangible personal property on his claim that such a tax was assessed only against the estates of deceased persons and not against living persons owning intangible personal property.

Article 9, section 1 of the Constitution of 1870 provides:

"The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise * * *."

The implementing statute regarding property taxes is Ill. Rev. Stat. 1969, ch. 120, par. 499, which provides in relevant part:

"Property subject to taxation

The property named in this section shall be assessed and taxed except so much thereof as may be, in this act, exempted:

First: All real and personal property in this state.

Second: All moneys, credits, bonds or stocks and other investments, the shares of stock of incorporated companies and association * * *."

There has been some discussion in the briefs of the parties relating to whether or not the trial court has declared a statute of the State unconstitutional. We believe it is unnecessary to discuss this issue since it seems to us beyond a doubt that no part of any statute was held unconstitutional by the trial court. Rather the trial court held that the manner in which the statute was applied was unconstitutionally discriminatory.

■■ On this appeal the appellant argues that the assessment in question was not unconstitutional arguing generally that the failure to assess some property is not a proper cause for invalidating assessments of other property. The appellee in support of the judgment of the trial court, argues that where there is gross discrimination in the assessment of personal property taxes such discrimination constitutes constructive fraud violative of the constitutional requirements of uniformity.

Before discussing the application constitutional principles it will be necessary to summarize the evidence in order to understand the basis of the trial court's order.

The Board of Review of La Salle County, after giving notice and holding a hearing, made a personal property assessment against the estate of George A. Moniot, deceased, in the amount of $39,620.00 by order entered November 5, 1969. Such property consisted of bank accounts and cash. Such intangible personal property was valued at 55% of its full value, the level at which other personal property was assessed.

The only witnesses testifying before the Property Tax Appeal Board were called by appellee and they were Dale McConville, Supervisor of Tax Assessments for La Salle County and also the Clerk of the La Salle County Board of Review; James Hunter, Deputy County Clerk of La Salle County and Stanley Twait, Chairman of the Board of Review

of La Salle County. The first named witness described the methods of assessing personal property tax in La Salle County and also furnished a statistical analysis of personal property returns for 1969. The second witness testified concerning records in his office relating to bank deposits and the third witness testified concerning a particular return which he had filed.

The practice of assessing personal property in La Salle County in the year 1969 was for the various township assessors to deliver personal property tax forms to taxpayers throughout the township. The assessor then follows the matter up and retrieves the filled in tax schedules from the taxpayer. Approximately 60,000 personal property tax returns were filed in La Salle County for 1969. No intangible personal property consisting of money, bank accounts, building and loan accounts and credits were included on any of these 60,000 tax returns, except on four returns of individuals and nine returns of corporations. The four individual returns were for $10,000.00, $1300.00, $1300.00 and $800.00 respectively. Each was listed as monies and credits. The $10,000.00 return was actually a conservatorship estate of which Stanley Twait, a member of the Board of Supervisors, and Chairman of the Board of Review at the time of this hearing, was the conservator. Nine tax returns filed by corporations listed intangible personal property consisting of monies and credits totaling $9970.00. The total assessment of intangible personal property of individuals and corporations, other than estates, for the year 1969 was $23,770.00 and was based on personal property schedules filed by thirteen taxpayers (four individuals and nine corporations).

The total personal property assessment for La Salle County for 1969 was $144,408,320.00.

It is the practice of the Board of Review of La Salle County followed in 1969 to call in all personal representatives of estates being administered in La Salle County where the bond filed is over $5,000.00. Normally no schedule has been filed by any of these personal representatives before they are called in by the Board of Review. The Board of Review goes over the assets of the estate with the attorney or the personal representative and makes an assessment based on the intangible personal property in the estate consisting of bank accounts, building and loan accounts and other debts that would be or may be due to the decedent.

In the year 1969, 304 personal representatives of estates were called before the Board of Review in this manner. As a result of these hearings personal property tax assessments were made against estates of decedents in the year 1969 in the amount of $1,747,580.00. These assessments made against estates of decedents were all based on intangible personal prop-

erty. Tangible personal properties were not included in making the assessment since tangible personal property was ordinarily included in returns secured by local assessors.

In the year 1969 there were a total of twenty-one banks in La Salle County, and the total bank accounts were in the amount of $201,678,-888.00. The various banks periodically file statements showing their total deposits in the Office of the County Clerk in order to qualify to receive county monies. The Supervisor of Assessments of La Salle County was aware of the fact that large amounts of money were on deposit in banks in La Salle County. No attempt was made by the Board of Review to make assessments against owners of intangible property other than estates of decedents.

■■ In insisting the action of the Board of Review in assessing intangible personal property of estates was merely the assessment of omitted property and unaffected by the omission of similar property from like assessments the appellant has called our attention to and relies solely on three cases, *Merritt v. Farriss* (1859), 22 Ill. 303, *Dunham v. City of Chicago* (1870), 55 Ill. 357, and *People v. Missouri Pacific R.R. Co.* (1922), 301 Ill. 541, 134 N.E. 314. Such cases do support the rule that omissions or undervaluations of other property which are merely negligent, inadvertent or a mistake do not and should not invalidate a tax levy or the assessment of property otherwise properly subject to the tax. The language of these cases although beyond the facts described, indicate that an assessment will be unaffected by the corrupt act of a public official regarding other property. The *Missouri Pacific* case quotes with approval from the two earlier cases and applied the rule where six sections were not included in a school district levy because the sections had been detached from the school district. Such detachment was later determined to be invalid. Thus the non-assessment of the six sections was the result of the mistaken belief that the sections were no longer in the district. However the court in the *Missouri Pacific* case made observations which presage the direction of decisions affecting problems analogous to the one in the case at bar when it observed.

> "Experience teaches us that it is impossible to have the tax laws executed so as to prevent any inequality and injustice, and, where these results have been produced by favoritism or fraud or intentional misconduct, the courts have always granted relief."

After discussing several cases which afforded relief from the arbitrary result of tax assessments the court in *People ex rel. McDonough County Collector v. Schmuhl* (1935), 359 Ill. 446, 194 N.E. 731, concluded that where similar property is generally assessed at the level of 37% of its full

value, the assessment of property at 100% of its full value constituted an arbitrary intentional violation of the rule of uniformity and a violation of constitutional rights. To the same effect is *People v. Commonwealth Edison Co.* (1941), 376 Ill. 70, 32 N.E.2d 902, where the court held that the failure of the taxing authority to apply the same rules for depreciation as applied to the property of other corporations was a constitutional violation of the right to have taxes assessed uniformly.

■■ This brings us to the landmark cases of *People ex rel. Kohorst v. Gulf Mobile and Ohio R.R. Co.* (1961), 22 Ill.2d 104, 174 N.E.2d 182, and *People ex rel. Hillison v. Chicago Burlington and Quincy R.R. Co.* (1961), 22 Ill.2d 88, 174 N.E.2d 175, wherein the court held that the assessment of railroad property at 100% of its full value while other property in the county was assessed at levels of 55% or less constituted such a gross discrimination between the property of tax payers that it could only be considered constructive fraud violative of constitutional rights. The railroad tax cases as well as the earlier cases cited have a common theme. Without charging or accusing individual officers, boards or departments with actual fraud or intentional wrongdoing, general policies which create substantial disparity between similar properties or classes of tax payers are violative of the principle of uniformity. In other words arbitrary discrimination which could not meet the constitutional mandate if incorporated in a statute is no less reprehensible when systematically established by practice, procedure or policy.

■■ Appellant's only response to the forgoing cases requiring uniformity in the assessment of taxes is to claim that the evidence does not show that the Board of Review knew of individuals other than estates who omitted intangible personal property from their tax assessment schedules. While we do not argue that such an inference may be properly drawn from the evidence such a contention is no refutation of the inescapable conclusions to be drawn from the evidence concerning the policies of the Board of Review. The only possible conclusion that can be drawn from the evidence is that the La Salle County Board of Review and the taxing officials subject to its jurisdiction had a deliberate and intentional policy of excluding intangible personal property of living persons from taxation and that the same deliberate and intentional policy required taxation of such intangible personal property belonging to estates administered in the county. It is equally clear that if the policies of the La Salle County Board of Review had been incorporated into a statute such discrimination could not stand and in our view the gross discrimination which has resulted from policies not sanctioned by statute are equally violative of article 9, section 1 of the Constitution of 1870 and can not stand.

For the foregoing reasons the judgment of the Circuit Court of La Salle County is affirmed.

Judgment affirmed.

SCOTT, J., concurs.

Mr. PRESIDING JUSTICE ALLOY dissenting:

I do not agree with the conclusion in the majority opinion that the assessment in the instant case is unconstitutional. It is clear that the Act (Ill. Rev. Stat. 1969, ch. 120, par. 499) itself was not determined to be unconstitutional as indicated in the course of the majority opinion. Also, as indicated in the majority opinion, the evidence in this case does not show that the Board of Review knew of individuals other than estates who omitted intangible personal property from the tax assessment schedules. There is no evidence of discrimination against other persons similarly situated since estates have been uniformly assessed pursuant to procedure outlined in section 589(3). (Ill. Rev. Stat. 1969, ch. 120 § 589(3).) I do not believe that the majority opinion is sustained by the record in the conclusion that the evidence established that the La Salle County Board of Review had a deliberate and intentional policy which showed favoritism, fraud or intentional misconduct. It could be concluded from the record that personal property which is inventoried in estates was clearly available for the local assessor and that a consequent assessment under the Act was made. Nothing similar could be said about living persons or corporations since the record showed that while a total of all deposits in La Salle County was available, there was no list of individual owners or accounts or the respective amounts which might be taxable. Although a theoretical knowledge may have existed that there were such funds, the Attorney General points out that the La Salle County Board of Review lacked specific information on the ownership of any such funds. This observation is sustained by the record. So far as the record is concerned it appears that where detailed information of the existence of intangible personal property, such as in estates, was available, the Board of Review did not fail to assess such intangible personal property of any person, corporation or estate.

It was directed to our attention on review that the lack of specific knowledge as to other persons and corporations owning intangible personal property created a regrettable situation perhaps where individuals and corporations were apparently able to violate the law without penalty. It was pointed out that this problem was met in the current Illinois Constitution of 1970, in which it is provided that the General Assembly

abolish all ad valorem personal property taxes. 1970 Illinois Constitution, Art. IX, § 5(c).

It has been the policy of this State to sustain enactments relating to assessment of property even though the assessing officers have been derelict in making assessments or otherwise operated improperly. (*Merritt v. Farriss*, 22 Ill. 303, 311-312.) It is pointed out that the officers may be made amenable to the law for misconduct in office but that the assessments if properly made are nevertheless valid, even if other assessments had been improper. (*Merritt v. Farriss*, 22 Ill. 303; *Dunham v. City of Chicago*, 55 Ill. 357.) It is clear, therefore, that unless there is a clear discriminatory assessment as against taxpayers, particularly those similarly situated, the circumstance that some other taxpayer may not be assessed at all or not properly assessed, does not relieve an objecting taxpayer of his obligation. Nowhere in the decisions rendered in this State has there been announced a conclusion that a failure to assess certain categories of property not specifically directed to the attention of the assessor, could result in relieving a properly assessed taxpayer of his obligation, for constitutional reasons, as contended in the majority opinion. As a consequence, I do not believe that the judgment of the trial court was proper. As a matter of fact, I believe that the record requires reversal in this cause, and that any other conclusion could lead to serious unanticipated consequences extending far beyond the particular issue involved in the cause before us.

For the reasons stated, I conclude that the judgment of the circuit court of La Salle County should be reversed.